# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **SAMUEL TURNER POOLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C.A. No. 99-635-SLR** |
| | ) | |
| **STAN TAYLOR, and** | ) | |
| **RAPHAEL WILLIAMS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT
## OF THEIR RENEWED MOTION FOR SUMMARY JUDGMENT

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

Richard W. Hubbard (I.D. No 2442)
Deputy Attorney General
Carvel State Building, 6th Floor
820 North French Street
Wilmington, Delaware 19801
(302) 577-8400
richard.hubbard@state.de.us

Attorney for the Defendants

Dated: October 10, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................. ii

NATURE AND STAGE OF THE PROCEEDINGS ......................................... 1

SUMMARY OF ARGUMENT ........................................................... 3

STATEMENT OF FACTS ............................................................. 4

ARGUMENT ....................................................................... 9

    I.      PLAINTIFF HAS FAILED TO DEMONSTRATE A TRIABLE ISSUE .. 9

          A.     Standard for Summary Judgment .................................... 9

          B.     There is no allegation or evidence of any personal involvement by either defendant or any knowledge of the alleged conditions by any defendant .................................................................. 10

          C.     The Third Circuit's decisions in the instant action and in *Hubbard v. Taylor* ............................................................... 10

          D.     Mattresses on the Floor for a Limited Period are Not a Violation of Due Process Where Prison Officials Have No Other Choice ........ 11

          E.     Plaintiff Has Failed to Show a Violation with Respect to His Medical Care ................................................................ 13

          F.     The Toilet Facilities at Gander Hill Were Adequate .................... 14

          G.     Temperatures at Gander Hill Are Maintained at Reasonably Comfortable Levels ...................................................... 15

    II.     THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY . 16

          A.     Immunity Must Be Granted Where the Law Is Not Clearly Established in a Particularized Sense ................................... 16

          B.     District of Delaware Jurisprudence on the Issue of Mattresses on the Floor ................................................................. 17

          C.     Eighth Amendment and Due Process Analysis ........................ 18

CONCLUSION .................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases:** <u>Page</u>

*Anderson v. Creighton,* 483 U.S. 635 (1987) ..................................................16

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)......................................9

*Bagwell v. Brewington-Carr*, Civ. A. No. 97-321, Sleet, J. (D. Del. Apr. 27, 2000),
   *aff'd*,  No. 00-1987 (3d Cir. Apr. 16, 2002)..........................................17

*Bartley v. Taylor*, Civ. A. No. 98-503, McKelvie, J. (D. Del. Dec. 10, 1999) .................17

*Beard v. Banks*, --U.S.--, 126 S.Ct. 2572 (2006) ..................................................9

*Boring v. Kozakiewicz*, 833 F.2d 468 (3d Cir. 1987)........................................13

*Brandon v, Taylor, et al.*, Civ. A. No. 97-205, Robinson, J. (D. Del. Mar. 27, 2000) ......18

*Brosseau v. Haugen*, 543 U.S. 194, 125 S.Ct. 596 (2004) ...............................16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..................................................9

*Chambers v. Doe*, __F.Supp.2d__, 2006 WL 2776578 (D.Del. Sept. 26, 2006)...............10

*Ellegood v. Taylor*, No. 01-213, Robinson, J., 2002 WL 449758 (D.Del. Mar. 18, 2002)18

*Estelle v. Gamble,* 429 U.S. 97 (1976) ............................................................13

*Graham v. Conner*, 490 U.S. 386 (1989)..........................................................16

*Harris v. Brewington-Carr,* Civ. A. No. 98-9, Sleet, J., 1999 WL 33220027
   (D. Del. Apr. 30, 1999)......................................................................18

*Hubbard v. Taylor*, 399 F.3d 150 (3d Cir. 2005).........................................11, 12

Hubbard v. Taylor, No. 00-531, Robinson, J. 2003 WL 1697537 (D.Del. Mar. 28, 2003)18

*Hubbard v. Taylor*, __F.Supp.2d__, 2006 WL 2709619 (D.Del. Sept. 20, 2006).......11, 17

*Jackson v. Brewington-Carr,*Civ. A. No. 97-270, Farnan, J., 1999 WL 27124
   (D.Del. Jan. 15, 1999)........................................................................17

*Kost v. Kozakiewicz,* 1 F.3d 176 (3d Cir. 1993) ............................................18

*Martin v. Brewington-Carr*, Civ. A. No. 98-4, Farnan, J. (D. Del. Dec. 31, 1997)...........17

**Cases:**                                                                                                                    **Page**

*McCray v. First State Medical System,* 379 F.Supp.2d 635 (D.Del. 2005).......................14

*McKenna v. Brewington-Carr, et al.,* Civ. A. No. 98-368, Farnan, J.
    (D. Del. Apr. 5, 1999) ...........................................................................17

*Natale v. Camden County Correctional Facility,* 318 F.3d 575 (3d Cir. 2003 ................13

*O'Donnell v. United States*, 891 F.2d 1079 (3d Cir. 1989)..................................................9

*Poole v. Taylor*, No. 02-1385, 2003 WL 22319222 (3d Cir. Sept. 23, 2003) ....................1

*Renn v. Taylor*, Civ. A. No. 99-765, Robinson, J., 2001 WL 657591
    (D.Del. Mar. 2, 2001)............................................................................17

*Rode v. Dallarciprete*, 845 F.2d 1195 (3d Cir. 1988).......................................................10

*Saucier v. Katz*, 533 U. S. 194 (2001) ...............................................................................16

*Siegert v. Gilley,* 500 U.S. 226 (1991).........................................................................16, 17

*Tennessee v. Garner*, 471 U.S. 1 (1985).............................................................................16

*Torres v. Brewington-Carr*, Civ. A. No. 98-159, Longobardi, J. (D. Del. Nov. 29, 1999)17

*Union County Jail Inmates v. DiBuono*, 713 F.2d 984 (3d Cir. 1983) .................11, 12, 19

*Wilson v. Seiter*, 501 U.S. 294 (1991)................................................................................11

**Statutes, Rules and Other Authorities:**

*United States Constitution, 8th Amendment* ..................................................................17, 18

*United States Constitution, 14th Amendment* ........................................................................18

42 *U.S.C.* §1983 ....................................................................................................................1

Federal Rule of Civil Procedure 56(c) ................................................................................9

## NATURE AND STAGE OF THE PROCEEDINGS

On or about September 22, 1999, the Plaintiff, Samuel Turner Poole (hereinafter, "Plaintiff") filed the instant lawsuit pursuant to 42 U.S.C. §1983, alleging Eighth Amendment violations. (D.I. 2; A3, A13).  On January 3, 2002, this Court dismissed Plaintiff's complaint as frivolous (D.I. 21, 22; A4).

On or about January 18, 2002, the Plaintiff filed a Notice of Appeal.  On October 22, 2003, the Third Circuit Court of Appeals issued an order which vacated the District Court's order and remanded this action to the District Court for further proceedings.  *See Poole v. Taylor,* No. 02-1385, 2003 WL 22319222 (3d Cir. Sept. 23, 2003).

On October 29, 2003, the Plaintiff filed a motion for leave to amend his complaint and a motion for leave to file a supplemental complaint.  (D.I. 36, 37; A6).  On November 4, 2003 the Court denied the Plaintiff's motion to amend the complaint and granted the Plaintiff's motion to file a supplemental complaint.  (D.I. 39; A6).

Waivers of service were returned executed by the Defendants on December 16, 2003.  (D.I. 46, 47; A6).

On February 6, 2004, Defendants filed their answer to the complaint.  (D.I. 49; A7).  On February 26, 2004, Plaintiff filed what he designated as "a Counterclaim" against Stan Taylor and Raphael Williams. (D.I. 51; A7).

On November 12, 2004, the Court granted Defendants' motion to stay these proceedings due to the pending decision by the Third Circuit Court of Appeals in *Hubbard v. Taylor.*  (D.I. 61; A8).

On May 6, 2005, the Court issued an order granting consolidation of cases C.A. No. 99-635 and C.A. No. 00-531.  (D.I. 69; A8)  On August 5, 2005, the Court issued an

order to de-consolidate cases No. 99-635 and No. 00-531.  (D.I. 70; A9).

On January 30, 2006, the Defendants filed their first motion for summary judgment and brief in support of that motion.  (D.I. 86, 87; A10).  On September 7, 2006, the Court issued a Memorandum Opinion denying that motion with leave to refile within 30 days.  (D.I. 105; A12).  This is the Defendants' Opening Brief in Support of Their Renewed Motion for Summary Judgment, and a renewed motion for summary judgment accompanies this brief.

## <u>SUMMARY OF ARGUMENT</u>

I.      Plaintiff has failed to demonstrate a triable issue.

- There is no allegation or evidence of any personal involvement by either Defendant or any knowledge of the alleged conditions by any Defendant.

- Mattresses on the floor for a limited period are not a violation of due process where prison officials have no other choice.

- Plaintiff has failed to show a violation with respect to his medical care.

- The toilet facilities at Gander Hill were adequate.

- Temperatures at Gander Hill are maintained at reasonably comfortable levels.

II.     The Defendants are entitled to qualified immunity.

## STATEMENT OF FACTS

Plaintiff's complaint, motion to amend the complaint, and supplemental complaint allege that he was admitted to Gander Hill on March 24, 1999. (A22). For the first 72 hours he was placed in booking and receiving with about 20 other inmates. (A22). Then he was transferred to the "fitness center," which he shared with 50 or 60 other inmates. (A22). He was forced to sleep on a cot on the floor at Gander Hill prison in booking and receiving and in the fitness center. (A15). After a month, he was transferred to cell 1-A-3, where he was forced to sleep on a mattress on the floor for 180 days. (A19, A22). At some point insects crawled on the floor in his vicinity, and the supplemental complaint alleges that in July 1999 he received a cut for which he had 15 stitches, and he was concerned about a possible infection. (A22). He saw a nurse who advised him that it was not infected. (A22). Apparently, he had no further problem with the cut, as none is alleged. (A22). Nevertheless, he thinks that he should have had an x-ray to detect infection and that he was entitled to a plastic surgeon with respect to the scar. (A20).

The central allegation of this complaint is that Plaintiff was forced to sleep on a cot or mattress on the floor at Gander Hill for several months in 1999. This issue is the same as the primary issue in this Court's C.A. No. 00-531-SLR, *Hubbard v. Taylor*. The outcome of both these actions should be the same: summary judgment for the defendants for plaintiffs' failure to produce evidence of a constitutional violation and pursuant to the doctrine of qualified immunity. These issues were extensively briefed in the *Hubbard* case with counsel on both sides. The conditions at Gander Hill that are the subject of the instant complaint were the subject of the allegations in *Hubbard*. We repeat our

Statement of Facts in *Hubbard* below, as the same conditions are at issue at the same prison during the same time period:

The Multi-Purpose Criminal Justice Facility (known as "Gander Hill") is a modern, well lit, and well ventilated prison. It was constructed in 1982 and was enlarged by a new wing in 1992. (A58 at 4).[1] Stanley Taylor has been the Commissioner of the Delaware Department of Correction ("DOC") since the fall of 1995. (A30 at 3). Under Commissioner Taylor's tenure, the DOC has undergone the largest prison expansion in the State's history, adding 2,500 beds at a cost of approximately $185 million. (A33 at 15). The total capacity of the prison system with these additions is now about 6500 beds. (A46 at 66). Thus, nearly 40% of the Delaware prison system's capacity was added in the first seven years that Stan Taylor was Commissioner.

This prison construction project was undertaken pursuant to a Master Plan devised in 1995. (A49 at 79; A23-A28). It was believed at the time of the Master Plan's creation that its implementation would eliminate the severe overcrowding at Gander Hill. (A49 at 80). However, the actual numbers of additions to the Delaware prison system turned out to be higher than the projections anticipated by the Master Plan. (A50 at 81).

Large numbers of Gander Hill inmates are transferred to the Delaware Correctional Center ("DCC") on a regular basis, and several hundred Gander Hill inmates have been transferred to DCC specifically as a result of this expansion. (A39 at 38).

Commissioner Taylor has kept the Delaware Legislature informed on a regular basis of the actual prison population and capacity at Gander Hill. (A37 at 29). He has

---

[1] For the purpose of saving space, the Appendix contains a Min-U-Script of each deposition instead of the normal transcript. For this reason, citations to a Min-U-Script page will contain a page reference in addition to the Appendix page reference.

also advised the Legislature of the risks of overcrowding. (A37 at 30).  However, neither he nor the Warden, Raphael Williams, has any control over the number of admissions at Gander Hill prison. (A39 at 38).  Gander Hill receives approximately 18,000 admissions per year. (A41 at 46).

In 2002, the DOC spent approximately $16.4 million for medical services for its incarcerated population. (A46 at 65).  For the past ten years the DOC, and Gander Hill specifically, have been accredited by the National Commission on Correctional Health Care ("NCCHC") for maintaining the health care standards of that organization. (A43 at 56; A66 at 34-35).  The NCCHC audits prisons for compliance with its standards. (A43 at 56, A66 at 34).  There are only 16 states in the United States that have substantially every adult facility accredited by the NCCHC, and Delaware is one of those 16. (A145). Fourteen states have at least one prison accredited, but there are 21 states that have no facility accredited.  Pennsylvania has one facility accredited, and Maryland has none. (A145).

Though there is 24-hour medical coverage, regular hours of the infirmary at Gander Hill are 9:00 a.m. until 10:00 p.m. (A68 at 44, A70 at 49).  New arrivals at the prison are seen by medical staff within two hours. (A70 at 49).  They are given a tuberculosis tine test as part of this screening. (A70 at 49-50).  Inmate medical problems are triaged, and most medical requests are fully resolved within 72 hours. (A68 at 42, 44).

Generally, detainees are housed in the West wing and sentenced inmates are housed in the East wing. (A32 at 12).  The typical West wing modular unit or "pod" contains two housing units connected by a control room from which correctional officers can observe the two units.  Each unit contains a large dayroom of approximately 3900

square feet, with a sink, tables, chairs, and a television. Twenty cells surround the dayroom, and all are approximately the same size but with some variation. (A61 at 16, A62 at 20). Each of these cells may contains up to three inmates, two of whom have bunk beds, and one of whom sleeps on a mattress on the floor that can be slid under the bunk during the day. Inmates are assigned to the bunks or the mattress on the floor on a seniority basis, with the newest arrival getting the last choice. (A93 at 14-15; A77 at 11). Between the hours of 8:30 a.m. and 10:30 p.m., inmates are permitted out of their cells and may walk around the dayroom. (A84 at 40). Some inmates choose to exercise there. (A80 at 23-24).

Temperatures in the housing units of the prison are generally in the range of 72-78 degrees Fahrenheit in the summer and 68-72 degrees in the winter. (A149). The prison adjusts the temperature of individual housing units in response to requests by inmates (through officers) to either raise or lower the temperature. (A149-50). Work orders are generally completed within three days, but urgent problems such as a stopped up toilet will be repaired the same day. (A150). The toilets are all functional unless one is the subject of a work order. (A150). Every housing unit has a working shower, and most units have two showers (there are two units with one working shower each). (A150). Light bulbs are replaced after they burn out. (A150). The HVAC system works properly, and the duct work was cleaned in 1999. (A150). The facility spends approximately $450,000 annually on operating maintenance. (A151).

In the event of a staff shortage or security threat, there may be a lockdown. In a lockdown the inmates are not permitted out of their cells, which are locked. Lockdowns are done on a rotating basis, so that an individual housing unit will generally not be

locked down for more than four hours at a time. (A61 at 13). An effort is made not to lock down the same unit multiple times during a given day. (A60 at 11-12). Twenty-four hour lockdowns are rare. (A84 at 39-40, A60 at 11). Even the inmates admit that most days they are allowed out of their cells. (A84 at 40).

Inmates normally eat at the tables in the dayroom, but in the event of a lockdown the inmates are served in their cells. Food is transported from the Gander Hill kitchen to the pod inside insulated carts that help to maintain the food's temperature. The carts can be plugged into an outlet to maintain temperature. (A60 at 10). The Gander Hill kitchen has been improved over the years with bigger, faster, more modern equipment, including ovens. (A59 at 8).

In addition to the dayroom area, inmates also have access several times a week to an outside recreation area that is attached to each pod. The recreation period is generally up to 45 minutes. (A81 at 28). This recreation area is a paved surface with a basketball court. In inclement weather, inmates may be denied access to the outdoor recreation areas. (A81 at 25-26).

Nearly three million dollars were spent on capital improvements at Gander Hill in the period of 1998 though 2002 to maintain or elevate the living conditions for prisoners. (A145-46).

## ARGUMENT

## I.     PLAINTIFF HAS FAILED TO DEMONSTRATE A TRIABLE ISSUE.

### A.     Standard for Summary Judgment.

Federal Rule of Civil Procedure 56(c) provides that a party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *O'Donnell v. United States*, 891 F.2d 1079, 1082 (3d Cir. 1989). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 323-25 (1986). Once the movant satisfies this burden, the non-moving party must demonstrate to the court that sufficient evidence exists from which a jury might return a verdict in its favor. *Id.* The mere existence of some evidence in support of the non-moving party will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-moving party on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The plaintiff bears the burden of persuasion as to specific facts showing that there is a genuine issue for trial. *Beard v. Banks*, --U.S.--, 126 S.Ct. 2572, 2578 (2006). Though inferences of disputed fact must favor the plaintiff, inferences of disputed matters of professional judgment must

accord deference to the views of prison officials.  *Id.*

> **B.**    **There is no allegation or evidence of any personal involvement by either defendant or any knowledge of the alleged conditions by any defendant.**

It is well established that, in a civil rights action, plaintiff must plead and prove knowledge of and personal involvement in the constitutional deprivation by each defendant that plaintiff seeks to make liable.  *Rode v. Dallarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Chambers v. Doe*, __F.Supp.2d__, 2006 WL 2776578 at *11-*12 (D.Del.).  Here, Plaintiff has done neither.  There is no allegation of anything that would cause Stan Taylor or Raphael Williams to have knowledge of Plaintiff's housing conditions, cut on his head, access to toilet facilities, or any other matter of which he complains.  (D.I. 2, 36, 37).   Nor has Plaintiff presented any evidence of any such knowledge or personal involvement by Taylor or Williams.   Plaintiff cannot even produce a copy of a letter he wrote to either Defendant on this matter.   Defendant Williams' affidavit demonstrates that, during the relevant period, he had no knowledge Poole was even housed at Gander Hill, what the conditions of his housing were, what his toilet access was, whether or not he had a cut on his head, or any other aspect of Poole's complaint.  (A72).  Moreover, Williams' affidavit shows that Defendant Taylor works in Dover and had no reason to know anything about Poole or the conditions of his confinement. (A72-73).

> **C.**    **The Third Circuit's decisions in the instant action and in *Hubbard v. Taylor*.**

In a September 23, 2003 unreported per curiam opinion, the Third Circuit Court of Appeals vacated this Court's January 3, 2002 order dismissing the instant civil rights

complaint as frivolous.  The court found that the Plaintiff should have been given an opportunity to amend his complaint and that some of his allegations were sufficient to survive a motion to dismiss.  The court appeared to rely heavily on certain statements in *Union County Jail Inmates v. DiBuono,* 713 F.2d 984, 993-96 (3d Cir. 1983), concerning the constitutionality of mattresses on the floor.  However, when the Third Circuit analyzed this case in more detail subsequently in *Hubbard v. Taylor*, 399 F.3d 150, 163 (3d Cir. 2005), it determined that these statements in *Union County* were mere *dicta* and neither the defendants nor the District Court were bound by them.  This fact was important in this Court's subsequent granting of summary judgment for defendants, for the second time, in *Hubbard,* ( __F.Supp.2d__, 2006 WL 2709619 at *9 (D.Del. Sept. 20, 2006)), as to both the issue of constitutionality of the conditions and the issue of qualified immunity.

>    **D.    Mattresses on the Floor for a Limited Period Are Not a Violation of Due Process Where Prison Officials Have No Other Choice.**

In *Hubbard v. Taylor, supra,* the Court of Appeals reversed this Court's Memorandum Opinion on the grounds that a specific analysis under the Due Process Clause had not been conducted, and that an analysis under *Wilson v. Seiter*, 501 U.S. 294 (1991), does not apply to pre-trial detainees.  The due process analysis entails an examination whether there existed an intent to punish, whether the conditions are rationally related to a legitimate governmental objective, and whether the conditions are tantamount to punishment due to harshness.  In the record of *Hubbard v. Taylor* and in the instant case, there is no evidence whatsoever of any intent on the part of Commissioner Taylor or Warden Williams to punish detainees.  (To the contrary, any reasonable person looking at the facts contained in the instant Statement of Facts would

infer that substantial efforts are made by Delaware prison officials to ameliorate as much as possible the effects of excessive admissions caused by the Delaware courts.)  If *Union County* is a guide, the crowding at Gander Hill may be expected to be found rationally related to the objective of jailing detainees who cannot make bail.  *Hubbard, supra*, 399 F.3d at 161-62.  The only question is whether the conditions are so harsh as to be excessive in relation to the purposes assigned to them.  *Id.*

On remand to this Court in *Hubbard*, Your Honor found once again that mattresses on the floor at Gander Hill do not constitute a constitutional violation. *Hubbard*, __F.Supp.2d__, 2006 WL 2709619 at *8.  They are a reasonable response to the overcrowding caused by Delaware Superior Court incarceration orders and are not so harsh in their effect on inmates as to amount to punishment despite the lack of intent to punish.

In order to determine whether the crowding of a prison constitutes a violation of the Due Process Clause, the Court must consider the totality of the circumstances at the facility.  *Hubbard, supra*, 399 F.3d at 160.   The Third Circuit has ruled that *Union County*'s statements were *dicta.*  On remand in *Hubbard,* this Court found that identical conditions at Gander Hill during the same period that Poole complains of did not constitute a constitutional violation.  *Hubbard*, __F.Supp.2d__, 2006 WL 2709619 at *8. The fact that detainees at Gander Hill are free to spend their days in a large dayroom adjoining each cell greatly mitigates any suffering due to the temporary lack of a bunk in the cell.  Moreover, though the Third Circuit's statement in *Union County* asserted that mattresses on the floor are unsanitary, there is no evidence of any disease at Gander Hill caused by the practice.   Our Constitution does not hold that a practice adopted by

12

Japanese citizens for centuries and often the bedding arrangement of American soldiers and college students is not good enough, even on a temporary basis, for alleged criminals.

    **E.**    **Plaintiff Has Failed To Show a Violation with Respect to His Medical Care.**

Plaintiff alleges that his medical care at Gander Hill was constitutionally defective because he suffered a cut, received stitches, and was afraid for a period of time that it was infected. The grievances submitted by Plaintiff (copies of which were provided to Plaintiff during discovery) do not address this issue, and this issue should be dismissed for failure to exhaust administrative remedies, among other reasons.

With respect to medical claims, the Third Circuit Court of Appeals does not distinguish between claims by convicted inmates and those of pre-trial detainees. *Hubbard, supra*, 399 F.3d at 166 n.22; *Natale v. Camden County Correctional Facility,* 318 F.3d 575, 581-82 (3d Cir. 2003). The Eighth Amendment standard under *Estelle v. Gamble*, 429 U.S. 97 (1976) applies, and it requires deliberate indifference to establish a violation. *Id.*

Here, Plaintiff admits that he was given medical attention for a head injury and that the correctional staff took him to the medical provider for his treatment. Plaintiff does not allege nor does he provide any facts or information that could cause one to conclude that the Defendants were in any way involved, knowledgeable of, or indifferent to a serious medical need. Additionally, actual injury is a prerequisite to any Eighth Amendment medical claim under 42 U.S.C. §1983. *See Boring v. Kozakiewicz*, 833 F. 2d 468, 473 (3d Cir. 1987) (serious injury or illness required to support Eighth Amendment medical claim). In the instant case Plaintiff alleges no serious medical injury or illness. Rather, Plaintiff alleges he was at risk of infection to his stitches.

Alleging subjective fear of some possible risk that does not result in injury fails to state a claim upon which relief may be granted. *See McCray v. First State Medical System,* 379 F.Supp.2d 635, 638-39 (D.Del. 2005) (inmate alleging excessive risk by defendant in transporting him from Wilmington to Dover when inmate was in need of intravenous procedure failed to state a claim). There has been no showing by Plaintiff of any evidence that the conditions of the mattresses on the floor were such that he was likely to have received an infection. Though he has claimed his head was "numb," there is no confirmation in his medical records (which were provided to him during discovery) of that claim. (A100-143 ). Poole's medical records do show that he received a tetanus shot on the same day he cut his head and received sutures. (A100).

**F.     The Toilet Facilities at Gander Hill Were Adequate.**

In vacating the earlier dismissal of this action, the Third Circuit noted that an allegation of inadequate toilet facilities may state a claim. However, the complaint did not allege that Poole had no access to a toilet. Rather, it alleged that the fitness center was not "set up bathroom wise" for the fifty to sixty inmates housed there. (D.I. 2; A16). This issue was addressed in *Hubbard v. Taylor*, where Warden Williams testified that the inmates had access to two toilets, one inside the room and one outside it. (A63 at 21-23). The inmates were permitted to line up to use the toilets, unless there was a lock-down, in which case they had to go one at a time. (A63 at 23). Poole has made no showing here of an actual lack of access to toilet facilities.

The affidavit of Douglas Rodgers, a maintenance employee at Gander Hill, attests to the efforts to repair toilets in the cells as quickly as possible, which generally occurs on a same-day basis. (A150).

G.     **Temperatures at Gander Hill Are Maintained at Reasonably Comfortable Levels.**

The issue of temperature at Gander Hill was also litigated in the *Hubbard v. Taylor* action.  In support of their motion for summary judgment, the defendants submitted a videotape of a Correctional Officer Vargas walking around the institution, including housing areas, taking different readings (which were displayed on camera). This videotape has been copied and is submitted here in support of this motion, along with Vargas' affidavit.  (A152).  Temperatures in the housing units of the prison are generally in the range of 72-78 degrees Fahrenheit in the summer and 68-72 degrees in the winter. (A149).  The prison adjusts the temperature of individual housing units in response to requests by inmates (through officers) to either raise or lower the temperature. (A150).  Work orders are generally completed within three days, but urgent problems such as a stopped up toilet will be repaired the same day. (A150).

Temperature surveys conducted in August 2000 and February 2001 in the different housing units at Gander Hill support the Vargas videotape readings, in addition to the affidavits of Vargas and Douglas Rodgers, the maintenance worker.  (A154-160).

## II.     **THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

As noted in the "Statement of Facts" section above, the gist of Plaintiff's claim is identical to the claim in *Hubbard v. Taylor*:  that it is a violation of due process for detainees to be forced to sleep on a mattress or cot on the floor for several months.  For the following reasons, the Defendants should be granted qualified immunity in this case.

### A.     **Immunity Must Be Granted Where the Law Is Not Clearly Established in a Particularized Sense.**

Qualified immunity shields officials from suit and the burdens of litigation when they make a decision that, even if constitutionally, deficient, reasonably misapprehends the law under the circumstances.  *Saucier v. Katz*, 533 U.S. 194 (2001).  If the law does not establish in a particularized sense that the conduct clearly would violate the law, then immunity must be granted.  *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).  A court may not point to a generalized test or standard and deem it fair warning.  *Brosseau v. Haugen*, 543 U.S. 194, 125 S.Ct. 596, 599 (2004) ("The Court of Appeals  acknowledged this statement of law, but then proceeded to find fair warning in the general tests set out in *Graham* and *Garner*[2]. . . .   In doing so, it was mistaken.  *Graham* and *Garner*, following the lead of the Fourth Amendment's text, are cast at a high level of generality.").

The first question before the Court in a qualified immunity analysis is whether the facts show that the state actor's conduct violated a constitutional right.  *Saucier v. Katz,* 533 U.S. 194 (2002), citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).  The next stage of qualified immunity analysis requires that the Court ask whether the constitutional right

---

[2] *Tennessee v. Garner,* 471 U.S. 1 (1985); *Graham v. Conner,* 490 U.S. 386 (1989).

allegedly violated was clearly established on the particular facts of the case. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*.

This Court has ruled in at least ten conditions of confinement cases originating from Gander Hill that have encompassed the allegations set forth by the Plaintiff in his supplemental complaint. In these cases, the District of Delaware has recognized that overcrowding is an unfortunate fact of life for Delaware inmates, but triple-bunking and sleeping on a mattress on a floor do not violate the Eighth Amendment or the Due Process Clause.

**B.     District of Delaware Jurisprudence on the Issue of Mattresses on the Floor.**

With respect to the primary issue in the instant case, every Delaware District Judge has separately ruled that mattresses on the floor at the Gander Hill prison are constitutionally permissible: *Hubbard v. Taylor*, __F.Supp.2d__, 2006 WL 2709619 at *8 D.Del. Sept. 20, 2006); *Renn v. Taylor*, Civ. A. No. 99-765, Robinson, J., 2001 WL 657591 at *3 (D.Del. March 2, 2001); *Jackson v. Brewington-Carr*, 1999 WL 27124 (D.Del. Jan. 15, 1999); *Bartley v. Taylor,* No. 98-503, McKelvie, J. (D.Del. Dec. 10, 1999) (Memorandum and Order); *Bagwell v. Brewington-Carr*, 2000 WL 1728148 (D.Del. April 27, 2000); *Torres v. Brewington-Carr*, No. 98-159, Longobardi, J. (D.Del., Nov. 29, 1999) (Order); *Martin v. Brewington-Carr*, Civ. A. No. 98-04, Farnan, J. (D.Del. Dec. 31, 1997); *McKenna v. Brewington-Carr*, Civ. A. No. 98-368, Farnan, J. (D.Del. April 5, 1999)("Whereas the Courts in this Circuit have repeatedly held that, in light of prison overcrowding problem and the need for prison authorities to take interim

measures to house inmates within limited space, the fact that an inmate had to sleep on the floor in crowded or dirty conditions is insufficient to state a claim under Section 1983, and therefore, this Court concludes that the Plaintiff has no arguable legal basis for his claim regarding sleeping on the floor."); *Harris v. Brewington-Carr*, Civ. A. No.98-9, Sleet, J., 1999 WL 33220027 (D.Del. April 30, 1999); *Brandon v. Taylor*, Civ. A. No. 97-205, Robinson, J. (D. Del. March 27, 2000).

The Court should grant Commissioner Taylor and Warden Williams qualified immunity from any personal liability.

### C.     Eighth Amendment and Due Process Analysis.

In *Hubbard v. Taylor*, this Court ruled in a March 28, 2003 Memorandum Order that "pretrial detainees are afforded essentially the same level of protection under the Fourteenth Amendment; therefore, an Eighth Amendment analysis is still appropriate." *Hubbard v. Taylor*, No.00-531, Robinson, J., 2003 WL 1697537 (D.Del. March 28, 2003) at *3 n.1.  At the time it was made, this ruling was consistent with precedent in the District of Delaware.  *See Ellegood v. Taylor*, No. 01-213, Robinson, J., 2002 WL 449758 (D.Del. Mar. 18, 2002).  On appeal in *Hubbard*, the Third Circuit Court of Appeals disagreed with this Court's approach, but did not find it an extreme departure from the appellate court's own prior discussions of the issue:  "The district court was clearly mislead [sic] by our *Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir. 1993), analysis…. The district court's error is understandable given our discussion in *Kost*." *Hubbard v. Taylor*, *supra*, 399 F.3d at 165-66.  The Third Circuit stated that due process analysis was required, but did not suggest the outcome of that analysis.

Importantly, the Third Circuit Court of Appeals clarified in *Hubbard* that its prior

holding in *Union County Jail Inmates v. DiBuono*, 713 F. 3d 984 (3d Cir. 1983), was merely *dicta*, as this Court correctly concluded in its opinion in that case.  *Hubbard v. Taylor, supra,* 399 F.3d at 163 ("the district court did not err in concluding that it was not bound by our holding in *Union County*").  Since the *Union County* statements about mattresses on the floor were *dicta*, the Defendants were not bound by them, especially in view of contrary holdings in subsequent years (noted above) by this Court.  On remand, applying due process analysis, this Court correctly concluded that the defendants in *Hubbard* were entitled to immunity.  *Hubbard v. Taylor*, __F.Supp.2d__, 2006 WL 2709619 at *8.  The Defendants here, who are the same defendants as in *Hubbard*, are entitled to immunity here for the same reasons they received it in *Hubbard*.

## <u>CONCLUSION</u>

WHEREFORE, the Defendants request that this Honorable Court grant their renewed motion for summary judgment.

Respectfully submitted,

**STATE OF DELAWARE
DEPARTMENT OF JUSTICE**

<u>/s/ Richard W. Hubbard</u>
Richard W. Hubbard, Bar I.D. No 2442
Deputy Attorney General
Carvel State Building, 6th Floor
820 North French Street
Wilmington, Delaware 19801
(302) 577-8400
richard.hubbard@state.de.us

Dated:  October 10, 2006

Attorney for the Defendants

## <u>CERTIFICATE OF MAILING AND/OR DELIVERY</u>

The undersigned certifies that on October 10, 2006, he caused the foregoing

document to be delivered to the following person(s) in the form and manner indicated:

**NAME AND ADDRESS OF RECIPIENT(S):**

**Samuel Turner Poole**
**#BN-5599**
**PA Department of Correction**
**1100 Pike Street**
**Huntingdon, PA 16652-1112**


**MANNER OF DELIVERY:**

__One true copy by facsimile transmission to each recipient

__✓Two true copies by first class mail, postage prepaid, to each recipient

__Two true copies by Federal Express

__Two true copies by hand delivery to each recipient



/s/ Richard W. Hubbard____
Richard W. Hubbard, ID#2442
Deputy Attorney General
Department of Justice
Carvel State Bldg., 6th Fl.,
820 N. French Street
Wilmington, DE  19801
(302) 577-8400
richard.hubbard@state.de.us